## THE CITY OF ATLANTA v. SCHMELTZER.

In an action against a city for damages to real estate from the erection of a bridge, a written agreement signed by the plaintiff and others being pertinent and material, taken in connection with the testimony, should have been admitted in evidence, and being ambiguous in its terms, was explainable by parol.

November 6, 1889.

Evidence. Contracts. Ambiguities. Municipal corporations. Damages. Before Judge VAN EPPS. City court of Atlanta. March term, 1889.

Schmeltzer sued the city of Atlanta for $1,500 damages, alleging that he was the owner of a lot of land on the corner of Ella and Foster streets, 128½ feet on Ella and 100 on Foster, which, prior to March, 1887, had a frontage on Foster street, which was well traveled, and rendering the property easily accessible and chiefly valuable; that about the middle of that month, the city commenced work on that street, and removed plaintiff's fence protecting the front of his property thereon, as also his storehouse and dwelling-house lying on that street; that the fence was moved back ten feet and the house twenty-five feet, leaving this side of the property open and unprotected, as the original fence could not be made to stretch the greater distance to the storehouse; that instead of grading or improving for travel, sanitary, ornamental or other purposes said Foster street, the city erected a huge frame bridge thereon, rising some distance west of plaintiff's property and passing along and over and entirely obstructing and destroying, for travel and other purposes for which streets are used, said Foster street to the distance of 600 feet or more, the wooden pillars, beams and other material composing the foundation of the bridge being placed directly in Foster street along the entire front of plaintiff's property on the same, and rendering passage to and from the same to Foster street impossible

v 83-39

to vehicles and foot-passengers, which formerly was easy ; that some of the wood work of the bridge was placed upon the entire front of the property on Foster street to the distance back of ten feet, and plaintiff cannot utilize it, and the city has assumed authority over it ; that the bridge was about fifteen feet high with extended sides overshadowing plaintiff's property, and rendering Foster street, formerly open and well traveled, absolutely impassable even for foot-travelers ; that there is no means of egress from the property save along Ella street under this bridge, and no communication can be had from the bridge to the premises, except by taking a roundabout route of over a quarter of a mile off the bridge down to Decatur street and thence to Ella street, which terminates at its north end just beyond plaintiff's lot; that plaintiff has suffered loss from the removal of his houses and from their being rendered untenantable, they formerly having occupied good positions on Foster street, and his rents have fallen off $100, and will continue to diminish ; that plaintiff thus has left only so much of his property as fronts on Ella street, which is inferior in value and convenience to the original frontage on Foster, and that the market value of his property, in addition to the matters already set out, is greatly diminished, it having been worth, prior to the city's action, $2,000.

In addition to the general issue, the defendant pleaded that, prior to the alleged injury, plaintiff agreed with it, as an inducement to have the work and improvement done on Foster street, to waive all damages to his property by said work and improvement ; and that defendant did the work in accordance with the agreement, and it was understood by plaintiff to include the erection of a bridge at the point designated, and it was commenced in good faith within the time agreed upon in the waiver executed by the plaintiff, and the agreement was otherwise complied with.

The evidence for the plaintiff was, in brief, as follows : His deed conveyed property fronting 120 feet on Foster street and 150 feet on Ella street in consideration of $1,000, dated March, 1883. Before the bridge was built, Foster was the main street to this property, which is covered by the bridge extending ten feet over the lot. It was built early in 1886, and is 18 feet high and 60 feet wide and rests on large joists. The city moved plaintiff's house back 25 feet and took 10 feet along the entire front of his lot to widen Foster street. The two houses were injured by being moved back; the pillars put under them were not as good as the old ones ; the fence was damaged ; a part was put back and a part was not; the bridge shuts the sunshine off the lot; before it was built, plaintiff rented the house used for a church for $5.50 ; has not since been able to get more than $4.50 for it ; the two houses rented for $4.00 each before the bridge ; has not been able to rent them at all for the past year. The property was worth $1,800 to $2,000 when the bridge was built, afterwards it was worth not over $500; it was damaged by the building of the bridge at least $1,500. The strip of ten feet taken was worth $300 to $400. The noise made on the bridge by vehicles, etc. is very great. It is a huge frame bridge, with an overhanging, threatening and unsubstantial aspect. Foster street is entirely occupied and destroyed by it. It is 600 feet long; throws mud and dust on the lot. Since it was built, there is no outlet from the lot except by Ella street which runs under it, and water runs down from Foster street and stands in pools on Ella street in front of the property. It cuts off the property from Foster street. Before it was built, Foster street was the direct route to the city ; since then, you have to cross the railroad twice to get there from Decatur street. It is forty-one feet wide, Foster street being fifty feet wide. It comes up to

the corner of the property and covers five feet of the sidewalk, leaving an open space of five feet before you get to the lot. The bridge is ten feet high at the rock abutments and fourteen feet high at a distance of fifty feet from them. It is good and well-built of strong and substantial material. Foster street was very much improved by the work done on it, but plaintiff's property got none of the benefits on account of its position.

The evidence for defendant was, in brief, as follows: In 1885, plaintiff was offered $800 for his property, and agreed to take it, but when he brought up his deed, he did not have as much ground as he had represented, and the purchaser declined to trade. After the bridge was built, this purchaser offered him $1,000 for what he then had, but he refused this offer. Foster street was widened and graded and made a magnificent avenue. Plaintiff's property is worth more than before the work was done, and would sell for more. The bridge by itself is a damage, but the benefit from all the work is much greater than the damage. The pillars put under the houses were better than those there before. The property was at the bottom of a hill on Foster street. It was impossible to improve it before the work was done. It never did rent for much; people would not stay in it, it was too low and wet. The bridge is well-built and substantial; it ought to be repaired every five or six years. The city assessors fixed the value of this property for taxation in 1885, '86, '87 and '88 at $800, which was what they considered it worth then. Property east of plaintiff's lot is lower down, and his lot is drained by it.

The jury found for the plaintiff $850. The defendant moved for a new trial on the general grounds, the ground set out in the opinion, and others not now material. The motion was overruled, and exception was taken.

J. B. GOODWIN and J. T. PENDLETON, for plaintiff in error.

ARNOLD & ARNOLD, *contra*.

SIMMONS, Justice.

Schmeltzer sued the city of Atlanta for damages. A synopsis of the declaration and of the evidence adduced will be found in the official report of the case. The plaintiff recovered, and the defendant moved for a new trial upon several grounds. The only ground of the motion which we think necessary to discuss is the 5th, which is, in substance, as follows:

Because the court erred in ruling out the testimony of plaintiff that he signed the following agreement, and in refusing to allow defendant's counsel to prove by plaintiff that the condition in said agreement had been complied with, and that plaintiff understood when he signed said agreement that a bridge was to be built opposite his property, and in refusing to admit said agreement in evidence, the same having been tendered in evidence by the defendant.

"Atlanta, Ga., Feb'y 8th, 1886.—We, the undersigned property owners on Foster street in the city of Atlanta, hereby agree with each other and with the said city, in consideration of the benefit to accrue to us and our property from the widening and grading of Foster street, and from extending the same through from Calhoun street to Ivy street, that we will give a sufficient amount of the front of our property on said street not exceeding ten feet off of the same on either side, to widen the same to a uniform width of not exceeding sixty feet, in accordance with such plan as the city engineer and city authorities may decide to adopt. We also agree that said street may be brought to a grade by excavating and filling in accordance with the plan and profile to be made and adopted by the city authorities. We will make no claim from the city for compensation for either widening or grading, provided, however, that the city shall remove all fences and buildings that may be necessary, and replace the same in conformity to new line of street, and in as good condition as before removed, and provided that said work is commenced and entered upon in good faith during the year 1886."

Signed by Fred W. Schmeltzer and thirty-four others.

We think the court erred in the rulings complained

of in this ground of the motion. It seems to us that if the plaintiff understood when he signed this agreement that a bridge was to be built by the city over that part of the street opposite his property, and that the hollow or ravine was not to be filled with dirt, the defendant ought to have been allowed to prove it on the trial. If it was the understanding between him and the city that the bridge was to be built, then he was not damaged by the building of the bridge, and he would not be entitled to recover damages from the city on that account.

But it is argued that to have allowed this parol testimony would have had the effect to change or modify the written agreement. We do not think so. Construing the whole agreement, we think that it is ambiguous. It says, in substance, that in consideration of the benefit to accrue to us and our property from the *widening* and *grading* of Foster street, . . we will give ten feet of land on either side of said street to widen the same, in accordance with the plan the city authorities may adopt. We also agree that said street may be brought to a grade by *excavating* and *filling* in accordance with the plan and profile to be made and adopted by the city authorities, and we will make no claim for compensation for either widening or grading, etc. It thus appears that the widening and grading, and the excavating and filling, were to be done in accordance with the plan to be adopted by the city. The evidence shows that there was a deep hollow or ravine which ran across Foster street. Now is it clear what the meaning of grading, excavating and filling is, when used with reference to the plaintiff's property? Do they not need some explanation, when used with reference to the plan to be adopted by the city? Suppose there had been a river or large creek running across to Foster street, instead of this hollow or ravine, and these same words

had been used, would it be contended, under this agreement, that the river or creek would have to be filled? Clearly not. If the city had built a bridge over the river or creek, and the plaintiff had sued for damages, would the court have ruled out the understanding of the parties when the agreement was signed, that a bridge was to be built over the river or creek, instead of filling it up? We would say not. Then why not allow these words to be explained in this suit, when the evidence shows that the ravine is fifteen or twenty feet deep? Why not allow the parties to show what they understood was the meaning of these words, when used in reference to this ravine and this particular property? The record shows that Foster street is of considerable length, and these words could have been used with reference to other portions of the street, in their ordinary meaning, but when applied to this particular part of the street, may have had, with the consent and understanding of the parties, another and quite a different meaning.

We therefore think that the trial judge should have allowed this testimony, and should have let the jury pass upon the question. He should have let the jury say what meaning the parties gave to these words when the agreement was signed. If the plaintiff did not agree that a bridge should be built, then he would be entitled to recover such damages as he has sustained by reason of the building of the bridge. If he did agree to it, then he would not he entitled to recover damages for that reason. If these views are correct, it follows that the court should have allowed the defendant to prove by the plaintiff that he signed the agreement.

If there are any other errors, they are slight, and doubtless the court will correct them on another trial.

*Judgment reversed.*