[Civ. No. 14187. First Dist., Div. One. May 26, 1950.]

CECIL ABEL, Appellant, v. MAURICE O'HEARN, as Administrator etc., Respondent.

George M. Naus and Ben K. Lerer for Appellant.

Samuel L. Fendel, Sol Silverman and James A. Toner for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff, Cecil Abel, commenced an action against Valerie Bernhard McMahan to recover certain real property in Atherton in San Mateo County, which property, the plaintiff alleged, was conveyed to defendant as his performance under a partnership agreement. Plaintiff further alleged that since defendant had failed to perform her obligation to manufacture and distribute certain "soft" dolls and children's books, said property was held in constructive trust for plaintiff. The original complaint was filed October 26, 1945. An amended complaint was subsequently filed, to which defendant filed an answer and cross-complaint. On July 20, 1947, two days before the day originally set for trial,

Mrs. McMahan died, and shortly thereafter a supplemental and second amended complaint was filed which substituted Maurice O'Hearn, administrator of her estate, as defendant and cross-complainant. The case went to trial in September, 1948, and the trial court rendered judgment in favor of defendant. Plaintiff appeals from the whole of said judgment excepting that part decreeing that defendant take nothing by his cross-complaint.

Plaintiff's complaint seeks restitution. It traces $65,400 of the $77,400 paid by plaintiff into the Atherton property as an identified product of the money and seeks restitution under four counts: First, on a charge of fraud; second, on a charge of mutual mistake; third, on a charge of failure of consideration through a continuing and total breach of the obligation to manufacture and sell the soft dolls; and fourth, by reason of the dissolution of partnership through Mrs. McMahan's death, restitution of the land as capital contributed by appellant.

The trial court found as follows:

"2. That on the 2nd day of December, 1944, plaintiff and cross-defendant and Valerie Bernhard McMahan made and entered into a certain Agreement of Limited Parnership, . . . by which said plaintiff and cross-defendant acquired from said Valerie Bernhard McMahan, for a valuable consideration, a certain one-third interest in the profits of, and became a limited partner in said copartnership.

"3. That it is not true that the parties to the aforesaid Limited Partnership agreed that plaintiff should contribute, as capital thereto, money in an aggregate of $60,000.00, or in any other amount.

"4. That it is not true that any of the alleged representations, statements or promises set forth in plaintiff's supplemental and second amended complaint were false or fraudulent.

"5. That plaintiff conducted an investigation and obtained advice and counsel with respect to the representations, statements or promises allegedly made by said Valerie Bernhard McMahan.

"6. That the real property situated in San Mateo and particularly described in plaintiff's supplemental and second amended complaint was acquired by Valerie Bernhard McMahan as her sole property with her own funds; and that neither said plaintiff nor the aforesaid co-partnership acquired or has any right, title or interest therein.

"7. That plaintiff and Valerie Bernhard McMahan were not mutually mistaken in believing that the aforesaid real property could be used for manufacture purposes.

"8. That plaintiff knew at all times that said realty could not be used for manufacturing purposes.

"9. That at all times the truth of any representations, statements or promises allegedly made by said Valerie Bernhard McMahan was readily ascertainable by said plaintiff.

"10. That there was ample consideration for the payments made by said plaintiff to Valerie Bernhard McMahan in that (a) for the sum of $60,000.00 plaintiff obtained a one-third interest in the profits of a Limited Partnership and became a limited partner therein, and (b) for the sum of $17,400.00 plaintiff became the creditor of Valerie Bernhard McMahan in the sum of $2,000.00 for money loaned to her to liquidate some of her debts, and received the promissory note of said Valerie Bernhard McMahan in the sum of $15,400 dated January 15, 1945.

"11. That no sums of money were contributed by said plaintiff as capital contributions to the Limited Partnership of plaintiff and Valerie Bernhard McMahan.

"12. That the real property described in plaintiff's supplemental and second amended complaint was conveyed to Valerie Bernhard McMahan as an individual by a deed absolute and unconditional.

"13. That the Limited Partnership agreement entered into by and between plaintiff and Valerie Bernhard McMahan provides that the title to the real property described in plaintiff's supplemental and second amended complaint shall vest in Valerie Bernhard McMahan free and clear of all liens or encumbrances, and contains no provision for any interest in, or use of, said real property by the Limited Partnership.

"14. That no issue is raised by the pleadings herein with respect to plaintiff's right to a dissolution of the Limited Partnership, or for an accounting or for the appointment of a receiver for such purpose, nor is there any claim for any such relief contained in plaintiff's supplemental and second amended complaint.

"15. That no issue is raised by the pleadings herein with respect to plaintiff's possible status as a creditor of the Estate of which defendant is administrator, in that there is neither allegation nor proof of any presentment or filing of any creditor's claim by plaintiff against said Estate.

"16. That the provision of the receipt-agreement dated

October 26, 1944 by which plaintiff and cross-defendant was to pay $40,000.00 within thirty days thereafter for an option in the hard dolls is indefinite and uncertain, and said agreement was not signed by said plaintiff and cross-defendant.''

Appellant in his 115-page opening brief makes a vigorous and forceful attack upon the sufficiency of the evidence to support the judgment. It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence it must appear from the record that, accepting the full force of the evidence adduced together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, it still appears that the law precludes the prevailing party from recovering judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which fairly may be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory must be disregarded.

Bearing in mind this familiar rule, which, we are constrained to state, too often is overlooked by counsel in arguing conflicting evidence before an appellate court, we shall present a brief summary of the factual situation as shown by the record in this case, and the inferences which may reasonably be drawn therefrom.

Mrs. McMahan was a woman of mature years living in Burlingame. She had designed and manufactured a number of patented ''hard'' dolls, called ''baseball dolls'' because they were dressed as baseball players, and had written and had published a series of copyrighted books illustrated with pictures of such dolls. About October, 1944, she was financially handicapped in the marketing these dolls and books and had an idea of manufacturing ''soft'' dolls—the same as the hard ones but with a soft covering—and selling them as teams of ballplayers together with the books. Plaintiff was introduced to Mrs. McMahan at that time by one William Berger, then her attorney, at her home in Burlingame as someone who had a business in which Berger thought plaintiff might be interested. Plaintiff was the owner of several bars in San Francisco and had other business interests. At that time Mrs. McMahan disclosed that she was about to sell a one-third interest in her hard dolls to two other parties for $150,000,

and that she needed $60,000 more "to complete her program" and that for that amount she would sell plaintiff one-third interest in her proposed soft dolls. After several meetings and some investigation of Mrs. McMahan and the potentialities of the doll situation, though never having asked for or seen a soft doll, plaintiff agreed to the purchase of a one-third interest in the soft doll venture, supposedly $35,000 of which was for his interest in the soft doll and $25,000 for his interest in the books, and on that date, October 26, 1944, he paid $10,-000 by check to Mrs. McMahan, which she said would be used to pay off loans made to her in the past. Plaintiff then promised to bring, and on the next day did bring, a $7,000 check, $2,000 of which was to be used by Mrs. McMahan to pay off additional past debts and $5,000 as a deposit on the Atherton property involved here and which Mrs. McMahan thought "suitable" for her work. A memorandum was signed on these two dates covering the transactions taking place at that time. On December 1, $5,000 additional was paid by plaintiff to Mrs. McMahan at her request to enable her to get an extension of time from the title company to hold the Atherton property which she contemplated purchasing.

Six drafts of a partnership agreement, which was to embody the rights of the parties, were made by Berger and the next to last one still referred to the figures of $35,000 and $25,000 for plaintiff's interest, respectively, in the soft dolls and books. The agreement finally signed, however, on December 2 or 15, 1944, provided that the only consideration which plaintiff was to give in exchange for the one-third interest was the property here involved. Paragraphs 1 to 4 inclusive of that agreement are as follows:

"(1) The said Second Party shall on January 2nd, 1945, transfer and *grant*, by grant deed, to the First Party, real property free and clear of all liens or encumbrances, located in San Mateo County, Calif., and as set forth and described in a copy of a deed to be attached hereto and marked exhibit 'A', as and for his interest as hereinafter set forth, in the manufacture and sale of the said soft baseball doll teams and such other soft doll teams as may hereafter be agreed upon, and as and for their interest as hereinafter set forth, in the sale and distribution of the said travel baseball books, together with the expansion thereof.

"(2) That upon the transfer of record, of the aforesaid real property and as aforesaid, by said Second Party to said First Party, a Limited Partnership is hereby formed and in full

force and effect, and shall be known and designated under the name of [*left blank*]

"(3) The aforesaid First Party shall be the General Partner and the aforesaid Second Party shall be the Limited Partner.

"(4) The said Limited Partner shall receive as his interest as hereinafter set forth, by reason of the granting of the said real property as aforesaid, one ($\frac{1}{3}$) third, of all net profits, as hereinafter set forth or determined, derived from the manufacture and sale of the said soft ball doll teams, and also one ($\frac{1}{3}$) third of all net profits, as hereinafter set forth or determined, from the sale and distribution of the said travel baseball books and expansion thereof."

It was explained that the purpose of the alteration in terms was merely to avoid possible income taxes payable by Mrs. McMahan, and that this way it would be an exchange of property for property rather than a capital gain. The transfer would also take place in the year 1945 rather than 1944.

Mrs. McMahan had previously entered into an agreement with a Mr. Adams for the purchase of an 11-acre residential estate in Atherton, on which there were located a large residence, a superintendent's house, a gardener's house, a garage with living quarters, and miscellaneous structures including greenhouses, storage houses and a pumping plant. The purchase price was $65,000 and Mrs. McMahan intended to use the $60,000 obtained from the sale of the one-third interest in the soft dolls and books to pay for the property, but upon the advice of Mr. Berger it was decided to handle the matter so that it would be an exchange of property and thereby avoid possible income taxes by Mrs. McMahan. To that end there were placed in escrow with the title company a deed from Adams to plaintiff and his wife, and also a deed from plaintiff and his wife to Mrs. McMahan. The partnership agreement was also left with the title company to be delivered to plaintiff upon the completion of the transaction, and the deed to Mrs. McMahan was attached to the signed agreement. About December 16, 1944, plaintiff paid to Mr. Berger for Mrs. McMahan an additional $40,000, making plaintiff's total payment to her up to that time the sum of $62,000; and on January 17, 1945, the final payment on the Atherton property was made to the title company by Mr. Berger, and the agreement of partnership and the deed to Mrs. McMahan were delivered from escrow. Plaintiff received the agreement and Mrs. McMahan the deed to the property. She thereupon

took possession of the property, moved her furniture and personal property, including dolls and books, from her residence in Burlingame to the residence on the Atherton property. While the documents were still in escrow with the title company, Mrs. McMahan, on January 15, 1945, borrowed an additional $15,400 from plaintiff, giving her promissory note for that sum.

There is a sharp conflict in the evidence as to whether the Atherton property was property of the partnership or the property of Mrs. McMahan alone. The deed was to her as an individual and the agreement nowhere states that it was to become the property of the partnership; in fact, the agreement provides that she was at all times to retain all property. Plaintiff on the appeal contends that it was understood that the Atherton property was to be the property of the partnership and the manufacturing site for the production of the soft dolls. Defendant contends that Mrs. McMahan purchased the Atherton property for her residence; that it was never intended to be, and could not be, used as a manufacturing site because of building and business restrictions of which plaintiff was well aware; that Mrs. McMahan intended the property to be her residence and the place where she would design and perfect the soft dolls; that plaintiff paid $60,000 for a one-third interest in the soft dolls, books and the profits from the limited partnership, and not as a capital contribution to the partnership. The trial court found in accordance with the contentions of defendant, and the attack of plaintiff upon the judgment is based primarily upon the sufficiency of the evidence to support such findings.

After Mrs. McMahan moved into the Atherton property she set up cutting tables for model-making purposes in the so-called ''greenhouse'' and made inquiries to get proper material for dollmaking; she employed several women to work on the sewing machines to obtain the ''precise stitch'' on the materials they were using; she rewired the premises to secure a higher voltage to power her portable sewing machines and machines for cutting materials. She brought out from New York an expert dollmaker and she also had her attorney ascertain the extent of the creative work she could do on the premises under the permissive provisions of the town of Atherton ordinances. She also made some inquiry and investigation in the area for a factory site. Her expert dollmaker was unable to obtain the right materials to perfect a soft baseball doll for production and gave up ''the idea of trying to sub-

stitute for the correct materials.'' There was testimony that the correct materials were ''cotton fabrics, mostly duvetyn'' and that due to war conditions such material was not available during 1944 and 1945, and did not become available until 1947. There was also testimony that plaintiff and Mrs. McMahan were ''going to temporarily abandon the soft doll idea, and that he was going then directly into the manufacture of the hard dolls.'' Attorney Berger testified that on April 4, 1945, plaintiff was talking about a manufacturing site and that on April 11, 1945, plaintiff went to Berger's office and discussed with him the matter of ''getting a site for the purpose of manufacturing hard dolls and soft dolls . . . and paying more money''; also that on September 21, 1945, plaintiff again visited Berger's office, saying ''he was looking around at sites with her [Mrs. McMahan],'' and indicated that before he put up any more money it should be on conditions that would assure its return to him. Shortly thereafter, on October 26, 1945, plaintiff filed the original complaint in the instant action.

The foregoing is a brief summary of the factual situation. Additional facts will be set forth hereinafter. We rarely have read a record in which there was so much conflicting testimony, and we can well understand the extremely difficult task that confronted the trial judge, upon whom rested the duty and responsibility of weighing this mass of confusing and contradictory testimony. Fortunately for us, we do not have to weigh and evaluate the conflicting testimony as that duty is one exclusively for the trial judge. As an appellate tribunal we are merely concerned in determining whether there is substantial evidence to support the findings of the trial court.

Before discussing the major contentions of appellant, we quote appellant's statement that ''although we respectfully disagree with the learned trial judge's finding 4 that none of Mrs. McMahan's 'representations, statements or promises . . . were false or fraudulent,' we make no appellate attack upon that finding.'' This is an admission that the record supports the finding that there was no fraud or misrepresentation on the part of Mrs. McMahan.

The first contention of appellant is that the evidence is insufficient to support Findings 6 and 12, which are in substance as follows: (6) That the Atherton property was acquired by Mrs. McMahan as her sole property with her separate funds and that neither the appellant nor the copartnership acquired or has any interest therein; (12) that said real prop-

erty was conveyed to Mrs. McMahan as an individual by deed absolute and unconditional. Appellant argues that since the deed was attached to and referred to in the contract providing for the one-third interest in the partnership such deed was conditional and performance was a condition subsequent. Appellant cites the case of *Downing* v. *Rademacher*, 133 Cal. 220 [65 P. 385, 85 Am.St.Rep. 160]. In that case, concurrently with a grant deed of mining land to Downing, he gave a written agreement to Rademacher whereunder a promise was made to pay Rademacher a royalty of one-third of the proceeds of mining gold on the land. Subsequently, Downing did not mine the land and contended that the deed to him was not affected by his failure to perform by mining the land. The Supreme Court in ruling against Downing's contention stated, at page 224: "The deed and the agreement constitute one instrument, and must be read as though each referred to the other and expressly incorporated its terms. And, in legal effect, what do they amount to? As between the parties, at all events, there is no such magic in a conveyance of a title in fee which can be used to do an owner out of his property. Under this contract and deed, all Downing acquired was the right to work the mine in his own way, on condition that he deliver to Rademacher one third of the valuable minerals obtained. The conveyance was, in effect, subject to this condition."

Appellant also cites *Richter* v. *Richter*, 111 Ind. 456 [12 N.E. 698], where the court said (p. 459) : "If from the nature of the acts to be performed by the grantee, and the time required for their performance, it is evidently the intention of the parties that the estate shall be held and enjoyed on condition that the grantee perform the acts specified, then the estate is upon condition. This is especially so when the grantor has reserved no other effectual remedy for the enforcement of the performance on the part of the grantee."

There is no question as to the correctness of the rule of the cases cited by appellant, but it plainly appears in both of those cases that the consideration for the deed was the agreement to perform the service. The difficulty with appellant's position in the instant case is that the court found upon sufficient evidence that for the payment of $60,000 appellant obtained a one-third interest in the profits of a limited partnership, that the real property was acquired by Mrs. McMahan with her own funds, and that the said property was conveyed to Mrs. McMahan as an individual by deed absolute. If we were compelled by the record to conclude that the evidence could

be given no other construction than the one given it by appellant, we might agree with appellant's contention. But there is in the record evidence from which it is fairly inferable that appellant paid Mrs. McMahan $60,000 for a one-third interest in the profits of a limited partnership, and that the Atherton property was not intended to and did not become a part of the partnership assets, and therefore the rules enunciated in the cases cited by appellant do not apply.

Appellant argues that the evidence of Berger and a witness, Fry, as to the negotiations between appellant and Mrs. McMahan, including the successive drafts of the contract, was an effort, by contradiction, to destroy the contract provision about the deed in the final draft, and was, therefore, an effort by parol evidence to change the written contract of the parties. But the true consideration for an agreement may always be shown. (Code Civ. Proc., § 1962.) The agreement in the instant case, taken as a whole, is not so free from ambiguity as to exclude parol evidence to explain it, for, as stated in the last paragraph of section 1856 of the Code of Civil Procedure, ". . . this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1860, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties." And, as stated in section 1860 of the Code of Civil Procedure: "For the proper construction of an instrument the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." The following language in *Balfour* v. *Fresno Canal & Irr. Co.*, 109 Cal. 221 [41 P. 876], at pages 225-226, is applicable: " 'The true interpretation of every instrument being manifestly that which will make the instrument speak the intention of the party at the time it was made, it has always been considered an exception, or perhaps a corollary, to the general rule above stated, that when any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument itself.' (*Sandford* v. *Newark etc. R. R. Co.*, 37 N.J.L. 1, 3.) For the purpose of determining what the parties intended by the language

used, it is competent to show not only the circumstances under which the contract was made, but also to prove that the parties intended and understood the language in the sense contended for; and for that purpose the conversation between and declarations of the parties during the negotiations at and before the time of the execution of the contract may be shown. (Code Civ. Proc., §§ 1860, 1861; *Atlanta* v. *Schmeltzer*, 83 Ga. 609 [10 S.E. 543]; *Keller* v. *Webb*, 125 Mass. 88; 28 Am.Rep. 209; *Long* v. *Long*, 44 Mo.App. 141; *Sweat* v. *Shumway*, 102 Mass. 365; 3 Am.Rep. 471.)''

We therefore are unable to agree with appellant's contention that the findings that the Atherton property was acquired by Mrs. McMahan as her sole property with her separate funds and that neither appellant nor the partnership has any interest therein lacks support in the record. There was a finding that there was no fraud or misrepresentation, which finding is not attacked by appellant, and we believe that the general rule, as stated by this court in *Borden* v. *Boyvin*, 55 Cal.App.2d 432, at page 436 [130 P.2d 718], is applicable: ''It is the rule in this state that a deed unaffected by fraud in its inception conveys title, and is not rendered void or subject to rescission on account of a failure of consideration. What is done after its conveyance has no effect upon its validity where performance is not required as a condition. (*Lavely* v. *Nonemaker*, 212 Cal. 380 [298 P. 976]; *Lawrence* v. *Gayetty,, supra* [78 Cal. 126 (20 P. 382, 12 Am.St.Rep. 29)]; 26 C.J.S. 195, § 21; 9 Cal.Jur. 141.) The rule is based upon the idea of the finality of a deed. The remedy for the breach of a personal covenant not amounting to a condition is generally an action for damages. In *Johnson* v. *Clark*, 7 Cal.2d 529 [61 P.2d 767], an exception is noticed where the grantee promises to support the grantor; . . .''

■ As his second specification of error appellant contends that the court erred in making only the immaterial finding (10), ''That there was ample consideration for the payments made by said plaintiff to Valerie Bernhard McMahan in that (a) for the sum of $60,000.00 plaintiff obtained a one-third interest in the profits of a Limited Partnership and became a limited partner therein, and (b) for the sum of $17,400.00 plaintiff became the creditor of Valerie Bernhard McMahan in the sum of $2,000.00 for money loaned to her to liquidate some of her debts, and received the promissory note of said Valerie Bernhard McMahan in the sum of $15,400.00 dated January 15, 1945,'' and in not making the material and con-

trolling finding that she never manufactured or sold any soft dolls, that she failed to perform and therefore the consideration failed. Respondent contends that Mrs. McMahan gave exactly what was bargained for, a one-third interest in the proceeds of the manufacture and sale of the soft dolls and books, that the creation of a legal relation is a valid consideration and the courts will not remake for the parties a contract which happens to result in a bad bargain. He further argues that the obligation to manufacture and sell came *after* the agreement of limited partnership was delivered out of escrow and arises only out of that agreement to form the partnership as a method of combining the interests of the parties and not out of the original arrangement by which appellant became a one-third owner of the proceeds of the manufacture and sale. The latter was an *executed* contract, he argues, to which the rule providing for the rescission of contracts for failure of consideration does not apply where performance is not required as a condition.

It must be borne in mind that the trial court found that the Atherton property was acquired by Mrs. McMahan with her separate funds and that neither appellant nor the partnership acquired any interest therein, and we have determined that such finding is supported by the record. Finding 10 finds that there was ample consideration for the payments made by appellant to Mrs. McMahan. It is apparent that the trial judge reached the conclusion that the appellant, for the money paid by him to Mrs. McMahan, gained the right to one-third of the profits which would be made from the manufacture and sale of the soft dolls. While it is true that no soft dolls were manufactured, it is fairly inferable from the evidence that Mrs. McMahan made an effort to secure the necessary materials and to secure a site for manufacturing, but that due to shortage of materials and lack of financing she was unable to do so before appellant commenced the action against her. The partnership agreement was between appellant and Mrs. McMahan and it hardly can be held as a matter of law that the entire obligation of proceeding with the manufacturing of the soft dolls rested upon Mrs. McMahan.

While it is true that no soft dolls were ever manufactured, in view of the efforts which the record shows that Mrs. McMahan put forth, considering the difficulties that were encountered by her, we do not believe that it can be held as a matter of law upon the record here that there was a total

failure of consideration at the time that the action was commenced by appellant. While no such finding was made by the trial court, we believe it is necessarily included in the portion of finding 10 which states that there was ample consideration for the payments made by appellant to Mrs. McMahan. Appellant proposed no amendments to the findings prepared by respondent and made no objection to them, and while his failure to do so will not cure a failure to find on a material issue, yet appellant may not raise for the first time on appeal the question of uncertainty or that the findings are not sufficiently explicit. (*Moore* v. *Craig,* 5 Cal.App.2d 283, 286 [42 P.2d 647].)

Appellant's third major contention is that the evidence is insufficient to support Finding 7 that appellant and Mrs. McMahan were not mutually mistaken in believing that the aforesaid real property could be used for manufacturing purposes.

Appellant quotes from certain portions of the deposition of Mrs. McMahan indicating that she did not know that the commercial activity of manufacturing dolls could not be carried on on the Atherton property until she received a letter from the city attorney. But appellant overlooks the fact that in his deposition, which was introduced in evidence, is testimony that he knew that Atherton was "a restricted district" and that Atherton was "definitely a residence property." There was also testimony of the witnesses Fry and Berger to the effect that appellant knew the Atherton property could not be used for manufacturing. The weight of the conflicting evidence was a matter for the trial judge to determine, and we cannot hold that as a matter of law the evidence was insufficient to support the said finding.

Appellant contends that the trial court erred prejudicially in striking out his Exhibits 22 and 23. These were excerpts from the answer to the original complaint, verified by Mrs. McMahan, and the answer to the first amended complaint, verified by her attorney. These statements were made in Paragraph VI of the answer in reply to an allegation of scienter in support of the appellant's allegation of fraud. They were that Mrs. McMahan ". . . denies that said estate located in Atherton, San Mateo County, was not a suitable site for said business, save for the ordinances prohibiting said manufacture of which both plaintiff and defendant were equally ignorant and misinformed at the time of the making of said agreement dated December 2, 1944" and that "she did not

know and did not learn until April, 1945, that the manufacture of dolls was prohibited by the city ordinances of the City of Atherton, when she was first advised to that effect by a letter from the City Attorney of Atherton.'' The exhibits were offered by appellant as tending to prove the second count as admissions against interest, and were then admitted by the court. During the submission of the case on trial briefs, however, the court granted respondent's motion to strike them.

The trial court erred in striking out said exhibits, as the statements or admissions of a party made in another pleading in the same action, like any other admissions of a party, are admissible either as admissions against interest or for the purpose of impeaching the testimony of a party who has been a witness. The fact that the pleading in which the purported admission was made has been superseded by a later pleading and the further fact that the issues in the action are determined by the final pleadings do not change the rule as to the admissibility of such pleading containing the admission. The true rule is clearly stated in *Miller* v. *Lee*, 66 Cal.App.2d 778, at page 785 [153 P.2d 190], as follows: ''The court did not err in its rulings on the admission of evidence. Appellants complain particularly of the ruling permitting the introduction in evidence of the amendments to the answer to the first amended complaint, claiming that these amendments were superseded by later pleadings. Appellants testified at the trial that they had nothing to do with the issuance of the criminal complaint and knew nothing about it. In their verified amendments to the answer to the first amended complaint appellants admitted that they had consulted a lawyer before Lee swore to the criminal complaint, giving him the facts in detail in such manner as to indicate their purpose to have plaintiff arrested. These amendments were clearly admissible not only as containing admissions by appellants but also for the purpose of impeaching their testimony.''

However, as we have hereinbefore pointed out, there is ample evidence in the record to support a finding that appellant was aware of the fact that a manufacturing business could not be carried on in Atherton, and there is also evidence that Mrs. McMahan was aware of restrictions existing. In view of this evidence and of the other findings made by the court, we do not believe that the error of the court in striking out the exhibits was prejudicial error, as it is difficult to believe that appellant could have believed that a manufacturing plant of

the magnitude contemplated by him could have been constructed and operated in the exclusive residential town of Atherton.

■ Appellant's final contention is that the trial court erred in failing to make any finding with respect to or consequent upon dissolution of the partnership. Appellant states that this contention is "alternative" and "need not be reached if" appellant is "held entitled to restitution under any one of" his other contentions. Finding 14, which appellant contends "is not a finding at all but simply a refusal to find," is as follows: "That no issue is raised by the pleadings herein with respect to plaintiff's right to a dissolution of the Limited Partnership, or for an accounting or for the appointment of a receiver for such purpose, nor is there any claim for any such relief contained in plaintiff's supplemental and second amended complaint."

Appellant argues that the fourth count of the amended and supplemental complaint is purely a partnership dissolution count and that the fact of dissolution through the death of Mrs. McMahan stands admitted by the pleadings. Appellant asserts that dissolution having occurred, only the matter of liquidation is left, and in the liquidation appellant is clearly entitled to the Atherton land.

■ While it is ordinarily true that the death of a partner causes the dissolution of a partnership (Corp. Code, § 15031), yet if the partnership agreement so provides, the business may be continued after the death of a member (20 Cal.Jur. 794, § 93; *Thompson* v. *Gibb*, 1 Cal.Unrep. 173). ■ Here the agreement provided that in the event of the death of the general partner (Mrs. McMahan) "prior to the dissolution of the said Limited Partnership, the said Limited Partnership shall continue . . . and the heirs, executors, trustees or assigns of the said General Partner, shall be vested with all of the rights, benefits and privileges of the said General Partner."

The complaint filed by appellant, as stated in appellant's brief, sought restitution of the Atherton property under four counts. We are unable to agree with appellant's contention that Count IV is purely a partnership dissolution count. It does not allege the dissolution of the partnership nor does the prayer of the complaint seek such dissolution. After re-alleging the allegations of the first count it alleges that the sole contribution to the partnership consisted of the money contributed by appellant, that the Atherton property was purchased with said money, and that the respondent administrator took pos-

session of the property upon Mrs. McMahan's death and has since detained same from appellant. We believe that the trial court correctly determined that no issue was raised by the pleadings with respect to appellant's right to a dissolution of the limited partnership.

In view of the foregoing, the judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 20, 1950. Schauer, J., voted for a hearing.