[Crim. No. 1271.  Second Appellate District, Division One.—March 15, 1926.]

THE PEOPLE, Respondent, v. JOSEPH LEE KIRK-PATRICK, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—LOAN OF MONEY—EVIDENCE.—In a prosecution under an information charging embezzlement in two counts, the money alleged in the first count to have been embezzled could not have been the subject of embezzlement by defendant, where the undisputed facts showed that the money in question was advanced by the complaining witness to the defendant as a loan.

[2] ID.—EMBEZZLEMENT CHARGED IN SEPARATE COUNT—EVIDENCE.—In such prosecution, the evidence was sufficient to establish the embezzlement of the money charged in the second count of the information.

[3] ID.—COMMINGLING OF FUNDS—SEPARATE PROPERTY—COMMUNITY PROPERTY.—Money received by defendant from his wife for the purpose of buying a home did not, by the mere act of mingling it with other moneys in his bank account, cease to be a trust fund, and her separate property.

[4] ID.—COMMUNITY PROPERTY — PRESUMPTIONS — INSTRUCTIONS.—In such prosecution, the instructions given by the trial court were sufficient to protect all rights of the defendant relating to community property and to certain presumptions attending the acquisition of property by a married person.

(1) 20 C. J., p. 486, n. 60.   (2) 20 C. J., p. 417, n. 60.   **(3) 20** C. J., p. 486, n. 60.   (4) 16 C. J., p. 1063, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.  Arthur Keetch, Judge.  Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Homer C. Mills for Appellant.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, and Hamish B. Eddie for Respondent.

1.  See 10 Cal. Jur. 241.
3.  See 5 Cal. Jur. 297.

CONREY, P. J.—The information is in two counts, and the defendant was convicted on both of the charges. The first count charges embezzlement, on or about the twenty-seventh day of November, 1924, of the sum of $3,500 belonging to Elizabeth Gnabe Kirkpatrick. The second count charges embezzlement, on the same date, of the sum of $1,989.29, also the property of Elizabeth Gnabe Kirkpatrick.

The defendant and Elizabeth Gnabe became acquainted with each other in January, 1924. The defendant very promptly learned that Miss Gnabe, who had been a domestic servant for many years, owned cash and securities amounting to about $8,000. During the month of February they were engaged to be married. They agreed that Miss Gnabe would furnish money for the purchase of a grocery store, which would be operated by the defendant, who was experienced in that business, and they found a grocery store belonging to one Hanson, which seemed to be suitable for their purpose. Defendant and Miss Gnabe examined the store together on the twenty-eighth day of February. Hanson's price for the property was $3,500. In describing the transaction Mrs. Kirkpatrick testified as follows: "Mr. Kirkpatrick and Mr. Hanson talked about the store and made the arrangements about it, looked at it and then he came out to me and said, 'Why, Libby, Mr. Kirkpatrick wants $3500 for it, and I would like to get it for less,' and I said, 'Well, if Mr. Hanson won't sell for less, you pay him the $3500 for the store,' so he did. They arranged about the store and we talked about it, Mr. Kirkpatrick and Mr. Hanson and I, and I was satisfied for him to get the store, but before that we had planned about getting one. . . . Well, Mr. Kirkpatrick said that he would take the store for that, and that we would go the next day to Santa Ana and be married. We had talked about it before about— about being married before I turned the money over to him." The sale was completed on that day, Miss Gnabe paying for the property by assigning to Hanson two mortgages, each in the principal sum of $1,750, which Hanson accepted as payment of the purchase price. A bill of sale was executed by Hanson in the name of the defendant Kirkpatrick. Mrs. Kirkpatrick admitted that this was done with her knowledge and approval.

On the following day, February 29, 1924, the defendant and Miss Gnabe were married. From that time until the following November they lived together in a rented apartment, and the defendant conducted the business of the grocery store. In November, 1924, without the consent of his wife, the defendant sold the grocery store for the cash sum of $2,700.

Concerning the charge contained in the second count of the information, Mrs. Kirkpatrick testified in substance as follows: In April and May she and the defendant began to talk about buying a home. As a result of those conversations she sent east for some money which she had in a building and loan association. This money came to her in a check, which she indorsed and delivered to the defendant. He said to her: "If you send east for your building and loan, it will enable me to buy this home. . . . I am unable to pay for it all." She spoke to him about the business being in his name, and suggested that it was no more than right that the home should be deeded to her. He replied, "The home will be deeded to you." On the next day after Mrs. Kirkpatrick indorsed the check to the defendant he showed her the bank-book showing the deposit of said check. It was deposited in the same account in which he was accustomed to depositing the proceeds from the store, this account being in the name of the defendant. The proposed property for a home never was purchased. The defendant has never repaid to the plaintiff any of the money received from her on either one of said transactions.

On the evening before Thanksgiving Day of 1924, which was after the store had been sold, the defendant made an appointment to meet Mrs. Kirkpatrick at a place downtown in the city of Los Angeles and go with her to a theater. While she was waiting there for him he went home and removed therefrom his personal belongings. Later he called on her and together they discussed the situation. There had never been any trouble between them prior to this time. She asked him, "You mean that you are going to wilfully desert me like this?" He replied that he was going to Tia Juana. He said, "I have something in view down there, and if you don't do anything I might reconsider this act that I am about to do and come back." He

never did return and she did not see him again until she saw him in the county jail in February, 1925.

Before the marriage and before the purchase of the store the complaining witness said to the defendant, "In case I turn this money over to you to buy the store and anything should happen between us—you never can tell—will you turn this money—will you give me this money back?" He replied, "Absolutely, but there is nothing going to happen; we are going to lead a happy life and we are going to get along." The use of the money for the purchase of the store was never talked about as a loan. Some time after the store had been purchased the defendant said to his wife that since he had taken her interest from her when she turned this money over to him, he was going to arrange to pay her the interest on it. She replied that if he did she would use the interest for her clothes. Afterward, he gave her some payments of money as interest on the sum of $5,300, which was on the $3,500 together with another sum of $1,800 not involved in this action.

In February, 1925, Mrs. Kirkpatrick commenced an action against the defendant to recover from him the sum of $8,000 which, in her verified complaint, she alleged that the defendant had received from the plaintiff "to be used by said defendant for the use and benefit of said plaintiff." She made in that action an affidavit for attachment in which she alleged that the defendant was indebted to her in the stated sum of $8,000 on an express contract for the direct payment of money, etc. Default judgment in favor of the plaintiff was thereafter duly entered. The complaint and affidavit and judgment in that action were introduced in evidence in this action at the instance of the defendant, presumably for the purpose of showing that the transactions included in the information herein were solely in the nature of loans of money, which therefore could not be the subject of embezzlement.

In the present action no other evidence was introduced on behalf of the defendant, and there is no substantial conflict in the evidence of the facts which are in effect as shown by the foregoing statement.

The principal contention of appellant is that the evidence is insufficient to support the verdict. This contention is made separately for each count.

[1] With regard to the first count, appellant contends, among other things, that the transaction relating to the $3,500 was a loan, and that the evidence is insufficient to prove that the store and its contents, purchased with that money, or· that the proceeds of the sale of the store, were held in possession by him as agent or bailee of Mrs. Kirkpatrick or in trust for her or for her use. We are of the opinion that this contention must be sustained. Upon the undisputed facts it clearly appears that the money (in the form of said mortgages assigned to Hanson) was advanced by Mrs. Kirkpatrick ·(or Miss Gnabe, as she then was) to the defendant as a loan. Therefore it could not have been the subject of embezzlement by him.

[2] With regard to the second count, there is nothing in the evidence to indicate either a gift or a loan. Neither do we think that the money included in the second count became community property. The contention of appellant is that when the ·$1,829.29 check was deposited by him in the bank account kept for the business of the store, it was thus mingled with funds that presumably were community funds; that when Mrs. Kirkpatrick promptly learned that fact and made no objection, she thereby consented to such mingling of funds and there is no evidence of their subsequent segregation; that (as the court instructed the jury), if the money alleged to have been embezzled was community property, the jury was bound to render a verdict of not guilty; that there is no evidence that any specific sum of money appropriated by the defendant to his own use was other than community property. [3] We are of the opinion, however, that the money received by defendant from his wife did not, by the mere act of mingling it with other moneys in his bank account, cease to be a trust fund, and her separate property. (*Noble* v. *Noble,* 198 Cal. 129 [43 A. L. R. 1235, 243 Pac. 439].) The evidence is clearly sufficient to establish the fact that defendant embezzled this money.

[4] It is contended by appellant that the court erred in refusing to give to the jury certain requested instructions relating to community property and to certain presumptions attending the acquisition of property by a married person. It seems not necessary to enter into a detailed discussion of these items. The court did give some

instructions, conceded to be correct, in relation to that subject. We are satisfied that the instructions so given were sufficient to protect all rights of the defendant concerning this phase of the case.

Although the jury convicted the defendant on each count of the information, the court suspended judgment on the first count. The order denying defendant's motion for a new trial on the first count is reversed. The judgment on the second count is affirmed. The order denying defendant's motion for a new trial on the second count is affirmed.

Houser, J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1926.