[Civ. No. 17207.   Second Dist., Div. Three.   Apr. 28, 1950.]

CONTINENTAL NUT COMPANY (a Corporation), Appellant, v. LOUIS L. SLATE et al., Respondents.

J. Oscar Goldstein, Marvin E. Lewis, P. M. Barceloux, Burton J. Goldstein and Goldstein, Lewis & Barceloux for Appellant.

Tuttle & Tuttle, Edward W. Tuttle and Edward E. Tuttle for Respondents.

WOOD, J.—Plaintiff appeals from a judgment of dismissal entered upon an order sustaining a demurrer to his amended complaint without leave to amend.

It was alleged in the amended complaint as follows: On October 23, 1946, one Gerhard W. Stiefvater was doing business under the fictitious name of Continental Nut Company at Chico, California. On November 22, 1946, he assigned his interest in said business to the Continental Nut Company, a corporation, and assigned to said corporation all the outstanding claims and debts due said Stiefvater. On October 23, 1946, defendant Louis L. Slate was a general partner of defendant Slate Almond Company, a copartnership. Slate became the president and general manager of defendant California Almond Orchards, Inc., a corporation, some time in April or May, 1946. In April or May, 1946, defendant California Almond Orchards, Inc., a corporation "succeeded to the business and assets" of Slate Almond Company, a copartnership, and said corporation conducted its business in substantially the same manner and through the same persons "as had the said Slate Almond Company, a copartnership." Slate Almond Company, a copartnership, remained in existence during all times referred to therein and said Slate continued to be a general partner therein. Slate was authorized generally to carry on the business of defendant California Almond Orchards, Inc., a corporation, and to make the contract thereinafter referred to. For a number of years prior to October 23, 1946, said Stiefvater was engaged in the wholesale business of buying and selling almonds and walnuts. For many years prior to said date said Stiefvater made purchases of shelled almonds from the Slate Almond Company, a copartnership, "through said Louis L. Slate representing said copartnership, by oral agreements by telephone or oral conversations, and which said oral agreement was considered to be and constituted the agreement between the parties." In several transactions consummated between said Stiefvater and said

Slate prior to October 23, 1946, there "was no written memoranda" or written agreement setting forth the terms of the purchase but "the same was made solely through oral conversations had on the telephone." During that time said Stiefvater agreed to buy almonds and said Slate agreed to sell almonds, and deliveries were made under the oral agreement, and "the same" was recognized by said Stiefvater and said Slate as a sufficient contract "to consummate a purchase and sale agreement," and such transactions were accepted by them "as the mode, system and custom of doing business for the purchase of shelled almonds and like commodities without any further written contract being made between the parties." For the period commencing in April, 1946, to and including October 23, 1946, the defendant California Almond Orchards, Inc., a corporation, "permitted and held out said Louis L. Slate, its president, as the person with whom such oral contracts of purchase and sale of shelled almonds may be made by said Gerhard W. Stiefvater." Such purchases had been made for a period of approximately two years prior to October 23, 1946, and "the condition, method and system of making purchases" remained the same and was followed by said Stiefvater on October 23, 1946, when he made an oral contract with said Slate, "as president of defendant California Almond Orchards, Inc., and also as representing the Slate Almond Company, a copartnership" for the purchase of "600/100#" bags of sheller run almonds at 48 cents per pound to be shipped by said California Almond Orchards, Inc., and Slate Almond Company in December, 1946, or January, 1947, at the option of said Stiefvater. That "the oral agreement for the purchase of the same was made by long distance telephone at Oakland," and in said telephone conversation the defendants agreed with said Stiefvater that "they then and there sold to him 600/100 pound bags" of sheller run shelled almonds at 48 cents per pound, and that said purchase and sale was "then and there completed under the oral agreement then made," and it was further agreed that by reason of the fact that said Stiefvater made the purchase "over the telephone at Oakland," he was privileged "to further confirm said purchase and sale" by letter and memorandum after his return to Chico, and it was then agreed that "it would be some time around October 30th or 31st 1946." It was further orally agreed in said telephone conversation that since said Stiefvater was in Oakland no written agreement or present written confirmation of sale was

required, but that "it would be understood between them that said sale was then and there made," and that Stiefvater "could confirm the agreed terms of the purchase and sale and furnish shipping instructions after his return to Chico"; that in said telephone conversation it was understood and agreed, and Stiefvater so advised said Slate, that "he desired the said almonds then purchased by him to fill a definite commitment and order for almonds of that type and description with one of his own customers," that said Slate in making the oral contract knew and understood that said Stiefvater intended to use said almonds for the fulfillment of said commitment, and he represented to Stiefvater that it was "a firm and present sale to him" of said almonds, and that "the same would definitely be made available to him by defendants for the fulfillment of his said commitment" for the price and on the conditions then orally agreed upon.

It was further alleged therein that Stiefvater, pursuant to the agreement, did on October 30, 1946, "mail to defendants a written confirmation for the purchase of said almonds"; Stiefvater relied upon the representations and agreements of Slate and upon the mode, system and custom of doing business with Slate, and agreed to and did purchase said almonds at said price, and Slate agreed to deliver the same as per the oral agreement.

It was also alleged therein that at the time of said purchase and the mailing of the written confirmation said Slate had not advised Stiefvater that the name of the seller had been changed to California Almond Orchards, Inc., a corporation, but that Stiefvater was advised by Slate that the sale "was being consummated by him acting both in behalf of the partnership known as 'Slate Almond Company' and the corporation, the name of which was subsequently ascertained" by Stiefvater to be the California Almond Orchards, Inc., a corporation.

It was also alleged therein that after the confirmation was mailed by Stiefvater to defendants none of the defendants recognized said oral agreement, but repudiated the oral contract and refused after repeated demands to deliver the almonds to plaintiff; that prior to the repudiation of the oral contract by defendants, Stiefvater, relying upon the oral agreement, resold in the course of his business to one of his

customers "the said 600/100#" bags of almonds purchased by him from defendants; said resale was the commitment for the almonds referred to in the telephone conversation and was a binding obligation upon plaintiff to deliver the almonds to his customer; plaintiff was obliged to and did deliver to said customer "600/100#" bags of almonds of the same variety "obtained by plaintiff by purchase in the open market."

It was also alleged therein that at the time of making the oral contract said Slate was the president and general manager of the California Almond Orchards, Inc., and was also "the general partner and general agent" of the Slate Almond Company, a copartnership, and that he made the oral agreement pursuant to his status as president of said corporation and as general partner in the copartnership, and "in line with his general authority and accepted practice, mode and custom in connection with making oral sales of almonds with . . . Stiefvater, and recognizing and fulfilling such obligations without any written contract . . . or any such sale and purchase reduced to writing, and further in keeping with his representations to . . . Stiefvater that no written confirmation of said sale was necessary excepting the confirmation of . . . Stiefvater hereinabove referred to." It was also alleged therein that Stiefvater fully complied with the requirements set up as the general practice, mode and custom of defendants in making sales of almonds to him; that by reason of all the foregoing circumstances the defendants "waived the provisions requiring written memoranda of the contract to be signed by the parties to be charged, and that . . . defendants are estopped from claiming any benefit by or through the provisions of" the statute of frauds; that by reason of the refusal of defendants to fulfill the terms of said oral agreement of sale of "600/100 pound bags of almonds," the plaintiff was obliged to buy the same "in the open market to fulfill the resale commitment" with the result that plaintiff sustained a net loss of $15,500; that by reason of the circumstances alleged, plaintiff fully complied with the requirements set up as the general practice, mode and custom of Stiefvater and Slate in making oral agreements for the purchase and sale of almonds by telephone, and complied with "the requirement that written confirmation of the said oral agreement of purchase and sale be made on or about October 30th or 31st, 1946," and complied with the oral contract; and defendants were under a duty to act upon said purchase and sale "as

had been done in similar instances for several years' prior thereto by said defendants with said Gerhard W. Stiefvater.''

Section 1724, subdivision (1), of the Civil Code (statute of frauds) provides: ''A contract to sell or a sale of any goods . . . of the value of five hundred dollars or upwards shall not be enforceable by action unless . . . some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.'' (See, also, Civ. Code, § 1624a, and Code Civ. Proc., § 1973a.) The value of the almonds was more than $500, and no memorandum of the alleged sale was signed by any of the defendants, the parties to be charged. Appellant asserts that the allegations of the amended complaint show that the defendants, by their conduct, waived their rights under the provisions of the statute of frauds and also that they are estopped to rely on those provisions. The allegations so referred to by appellant are to the effect that over a period of years appellant had purchased almonds from said copartnership and Slate under oral agreements, and that there had grown up between the parties an accepted mode, system and custom of buying and selling almonds under oral agreements. There was no allegation, however, that the former oral agreements were for the sale of almonds of the value of $500 or more. If the former oral agreements involved values less than $500, those agreements of course would not indicate waiver or estoppel. Also, it is to be noted there is an allegation that in the telephone conversation appellant told Mr. Slate that he (appellant) desired the almonds to fill a *definite* commitment and order with one of his customers. If appellant at the time of said conversation had already made a definite commitment or agreement to sell the almonds, it would seem that he did not rely upon any statements of Mr. Slate when he made the sale to his customer. The amended complaint did not allege sufficient facts to show that defendants waived their rights under the provisions of the statute of frauds or to show that they were estopped to rely on those provisions.

It was alleged in the original complaint that on October 23, 1946, the parties made an oral agreement for the purchase and sale of almonds in the same amount, at the same price, and under the same general circumstances as alleged in the amended complaint. In the original complaint, after having alleged the oral agreement, it was alleged that on October 30, 1946, the plaintiff mailed ''a confirmation purchase order for

said almonds to defendant Slate Almond Company," which was as follows:

"CONTINENTAL NUT Co.          PURCHASE ORDER          No. 295 P
Eleventh and Esplanade          Date          October 30, 1946
Chico, California

Slate Almond Company          Acknowledge this order immediately.   Send invoice to Continental Nut Co.   Advise immediately when you will ship.   Show order number on invoice.   Carrier's receipt must accompany invoice

Paso Robles, California

Ship via

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|

600/100#   Bags Sheller Run Shelled Almonds          48¢
per pound
Buyer will accept straight car either Mission, Drake, Neplus or Nonpariel varieties.  No I X L will be acceptable.
Buyer will furnish bags and seller will allow usual bag differential.

Terms of Payment _____

Shipment   December or January, Buyer's Option

F.O.B. _____

CONTINENTAL NUT Co.
By G. W. STIEFVATER"

Defendants demurred generally and specially to the complaint.  The demurrer was sustained.

In the amended complaint, the plaintiff omitted the writing of October 30, 1946, which he had set out in full in the complaint.  In the amended complaint, after having alleged that the parties made an oral agreement, it was alleged that on October 30, 1946, plaintiff mailed to defendants "a written confirmation for the purchase of said almonds."  It appears that the trial judge, in construing the allegations of the amended complaint, considered (as shown by his written opinion) the words of the writing of October 30th as set forth in the original complaint.  Under the circumstances here, it was proper for the trial judge in construing the allegations of the amended complaint to refer to the writing of October 30th which was set forth in full in the complaint.  (See *Fox*

*Chicago R. Corp.* v. *Zukor's,* 50 Cal.App.2d 129, 135 [122 P.2d 705].) "Facts once alleged . . . cannot be withdrawn from consideration by merely filing an amended pleading omitting them without explanation." (*Neal* v. *Bank of America,* 93 Cal.App.2d 678, 682 [209 P.2d 825].) It is to be noted that the words "Purchase Order" appear at the top of said writing of October 30th. Also, the following words are thereon: "Acknowledge this *order* immediately" and "Show *order* number on invoice." (Italics added.) Also, the writing includes provisions which were not in the alleged oral agreement. In that respect, it is to be noted that the writing names the varieties of almonds which will be acceptable to the buyer, and names a kind that will not be acceptable; and states that the buyer will furnish bags and seller will allow usual bag differential. There is no reference in the writing to any oral agreement previously made or to any conversation at all. It therefore appears that said writing did not constitute a confirmation of the alleged oral agreement. As above shown, it is stated on the writing that it is an order. The writing was an order for, or an offer to buy, almonds as thereon specified. The order, or offer, was directed to the Slate Almond Company only, and it was not accepted by that company, or by the defendant Slate, or by the defendant California Almond Orchards, Inc., a corporation. Undoubtedly the said order of October 30th, which is set out in the original complaint, is the alleged "written confirmation" which plaintiff refers to in his amended complaint. The omission of the unaccepted order from the amended complaint does not remove it from the consideration of the court in construing the allegations of the amended complaint. The fact that the original complaint, which disclosed the existence of the unaccepted order, was not verified does not remove the order from consideration in construing the allegations of the unverified amended complaint. The written order of October 30th, submitted by plaintiff, is at variance in several respects, as above shown, with the alleged oral agreement of October 23d under which the purported sale was allegedly "then and there completed." The order refutes the allegation that on October 23d in a telephone conversation the plaintiff and the defendants "then and there" agreed that the "purchase and sale" was "then and there completed." The fact that said order was submitted by plaintiff refutes the allegation that the "accepted mode" of buying and selling almonds was

under oral agreements. ■ As above stated, sufficient facts were not alleged to show that defendants waived, or were estopped to rely on, the statute of frauds. The almonds were of the approximate value of $28,500, and there was no memorandum of the alleged contract of sale signed by the parties to be charged.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.