[Civ. No. 19605. Second Dist., Div. Three. Dec. 17, 1953.]

KATHLEEN THOMASSET, Plaintiff and Appellant, v. CHARLES A. THOMASSET, Defendant and Appellant.

Clyde C. Shoemaker for Plaintiff and Appellant.

Charles A. Thomasset in pro. per., William H. Hodge and Clarence Hansen for Defendant and Appellant.

VALLÉE, J.—Cross-appeals from particular parts of an interlocutory judgment of divorce. Plaintiff was awarded the divorce without contest. The controversy was with respect to the disposition of property.

Plaintiff appeals from those parts of the judgment which: 1. awards a half interest in certain real property to her; 2. decrees that certain property is the separate property of defendant; 3. orders defendant to pay her $225 a month for her support; 4. terminates an order for her support pendente lite as of May 1, 1952. Defendant appeals from those parts of the judgment which: 1. decrees that certain real and personal property is community property; 2. awards plaintiff certain personal property decreed to be community property; 3. orders him to pay plaintiff $225 a month for her support; 4. orders him to pay plaintiff's attorneys $2,250 as fees.

The parties were married March 26, 1945. Defendant has been a practicing attorney at law continuously since 1927. The property in controversy consist of a house and lot, referred to as the Hudson Avenue property, subject to an encumbrance; an apartment building and lot, referred to as the

Manhattan Beach property, subject to an encumbrance; household furniture and furnishings; money in possession of defendant; defendant's law offices and their equipment; his accounts receivable; and various other items of personal property.

The court found that the Hudson Avenue and Manhattan Beach properties are community property and awarded an undivided half interest to each party. It found that certain furniture and furnishings are community property and awarded them to plaintiff. It found that the remainder of the property is the separate property of defendant and decreed that plaintiff has no interest therein.

At the date of the marriage, defendant's separate property consisted of cash on hand and in bank, $7,388.75; accounts receivable, $30,722.33; library, $3,724; paintings, $600; and office furniture and supplies, $1,625. Total, $44,060.08.

Prior to marriage, defendant maintained a commercial account in his name with Bank of America. In June, 1949, he opened another commercial account in his name with another branch of the same bank. He maintained these accounts during all of the time in question. During marriage, defendant deposited all cash he had on hand at the time of marriage and all moneys he received from all sources after marriage in these accounts. He testified, "Everything went into that account." The deposits during marriage included separate and community funds; cash on hand and accounts receivable at date of marriage, defendant's pension as a veteran, dividends, proceeds of sale of property, and income from his practice. After marriage, all living expenses of the parties and all funds for the purchase of the properties in controversy came from these accounts. Title to realty was taken in joint tenancy, and title to the personalty, in the name of defendant. All properties involved on plaintiff's appeal were acquired after marriage.

### Plaintiff's Appeal

Plaintiff first contends the finding that all of the property not found to be community is the separate property of defendant is without support in the evidence. She argues that property acquired by husband and wife after marriage is presumptively community property; that the evidence shows indiscriminate commingling of all the community and separate funds whereby the identity of each was lost; it became impossible to trace the same and the whole should, therefore, be treated as community property. Defendant's position is that

all property purchased by him after marriage was purchased out of the money he had at the date of marriage, adding his pension money, insurance dividends, and fees which had accrued up to the time of marriage—all of which were his separate property—and that he was entitled to make the segregation by showing that at the time each item of property was purchased there were no community funds available to make the purchase, and that he traced his separate funds into the property decreed to be his separate property.

■ Property acquired during marriage and taken in the name of the husband is presumed to be community property. (*Fountain* v. *Maxim*, 210 Cal. 48, 51 [290 P. 576].) ■ The presumption is rebuttable. (*Wilson* v. *Wilson*, 76 Cal.App.2d 119, 126 [172 P.2d 568].) ■ The burden rests on the party asserting that property acquired after marriage is separate to establish that fact. (*Wilson* v. *Wilson, supra*, 126.)

■ There are expressions in the decisions to the effect that the separate character of property acquired after marriage is to be established by "clear and convincing evidence," "clear and decisive proof," "clear and satisfactory proof." (*Estate of Pepper*, 158 Cal. 619, 622 [112 P. 62, 31 L.R.A.N.S. 1092] ; *Estate of Rolls*, 193 Cal. 594, 597 [226 P. 608].) These expressions state a rule of evidence directed to the trial court; and if that court finds that the evidence meets the rule, a reviewing court must accept that determination as conclusive if there is substantial evidence to support it. (*Baines* v. *Zuieback*, 84 Cal.App.2d 483, 488 [191 P.2d 67].) The decision of the trier of fact must be according to the preponderance of evidence. (Code Civ. Proc., §§ 2061 (5), 2103.)

■ Whether the evidence adduced to overcome the presumption of community property is sufficient for the purpose is a question of fact for the trial court. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656] ; *Wilson* v. *Wilson, supra*, 126.)

■ Moneys earned by defendant prior to, but collected after, marriage were not community funds. (*Hill* v. *Hill*, 82 Cal.App.2d 682, 698 [187 P.2d 28] ; 10 Cal.Jur.2d 674, § 10.)

■ Whether property acquired by a man during marriage is separate is determined by the time of its acquisition. ■ If it was separate then, it remains so with the exception of such increase thereof as may have been due to the contribution of the community by virtue of capital or industry, unless by agreement of the spouses it is transmuted into community property. (*Berry* v. *Berry*, 117 Cal.App.2d 624, 629 [256

P.2d 646]; *Kenney* v. *Kenney*, 97 Cal.App.2d 60, 65 [217 P.2d 151].) Separate property does not lose its character as such by reason of a change in form or identity. (10 Cal.Jur.2d 680, § 18.) Property that is purchased with separate funds ordinarily continues to be separate property. (*Huber* v. *Huber*, 27 Cal.2d 784, 791 [167 P.2d 708].) Plaintiff was entitled only to a division of such income as defendant earned during marriage and property into which such income had been transmuted, if any remained. (*Hill* v. *Hill*, 82 Cal.App.2d 682, 697 [187 P.2d 28].)

It appears to be plaintiff's contention that if a dollar which is separate property is deposited in a bank account in which there is a dollar which is community property, the dollar which was separate property becomes community property; and if a dollar which is community property is deposited in a bank account in which there is a dollar which is separate property, the latter dollar becomes community property; and that, in either case, all property purchased with the deposited funds is community property. That is not the law. Where separate and community funds are so commingled that it is *impossible* to trace the source of the funds, the whole will be treated as community property. (*Fountain* v. *Maxim*, 210 Cal. 48, 51 [290 P. 576].) The presumption that property acquired during marriage is community is controlling only when it is impossible to trace the source of the specific property. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 210 [259 P.2d 656].) In *Estate of Lissner*, 27 Cal.App.2d 570 [81 P.2d 448], it is said (p. 574): "The stocks are the most valuable portion of the estate, and the main question in connection with them is the character of the real property in Los Angeles from the proceeds of which the court found that the stocks were pur·chased. While there is evidence that these proceeds were commingled with community funds, there was likewise evidence from which the court was able, very easily, to trace them directly into the stock. . . . The mere mingling of separate property of a husband or wife with community property does not change its character from separate to community property unless the property so mingled cannot be traced (*Scott* v. *Remley*, 119 Cal.App. 384 [6 Pac.(2d) 536])." If the exact amount of money allocable to separate property and the exact amount of money allocable to community property deposited in a bank account can be ascertained, the money allocable to separate property is not so commingled that all of the funds become community property. It can be traced.

(*Huber* v. *Huber,* 27 Cal.2d 784, 792-793 [167 P.2d 708].) In *Carle* v. *Heller,* 18 Cal.App. 577 [123 P. 815], it was held that the depositing in a bank account in the names of husband and wife of the proceeds of the sale of the wife's separate estate with the proceeds of the sale of community property did not constitute such a commingling as to render it impossible to trace and segregate the separate property from that of the community.[1] In *People* v. *Kirkpatrick,* 77 Cal.App. 104 [246 P. 84], it was held that money received by a husband from his wife which was her separate property did not, by the mere act of commingling it with presumably community funds in his bank account, cease to be her separate property. (See, also, *Rosen* v. *Rosen,* 17 Cal.App.2d 601, 603 [62 P.2d 384]; *cf. Berry* v. *Berry,* 117 Cal.App.2d 624 [256 P.2d 646].)

In *Hill* v. *Hill,* 82 Cal.App.2d 682 [187 P.2d 28], a case in which an attorney at law failed to open a new account at marriage and deposited separate and community funds in the same account after marriage, the court stated (p. 697) : ''The fact that after the marriage respondent failed to open a new bank account but continued to deposit his community earnings in the old account, the funds in which at the date of the marriage were his separate property, and to draw checks against it, furnishes no valid objection to the accounting.

''The rule relating to community funds argued by appellant is applicable where it is not possible to trace the community and separate funds and to segregate one from the other. The accountant was able to trace funds into and out of the account and to make up a statement therefrom showing the source of the funds and the purpose of the expenditures. Community indebtedness was properly charged against the community

---

[1]In *Carle* v. *Heller,* 18 Cal.App. 577 [123 P. 815], the court traced the funds thus (p. 583): ''The price paid for the property owned by the wife was $8,500. It increased in value rapidly, and several years after it was purchased a small lot in the rear thereof was bought by the husband for $1,700, making a total of $10,200 paid for the two pieces of property. Upon no reasonable hypothesis could the husband's share in the $26,000, for which the two pieces were sold, have exceeded the proportion which $1,700 bore to $10,200, or one-sixth of the whole, amounting to $4,333, from which, however, must be deducted the mortgage of $500, leaving a balance of $3,833. Add to this the additional sum of $548, which appellant claims Charles Heller had in this deposit, and we have $4,381 to apply on the West Sixth street property purchased for $13,000, paid out of the fund, the title to an undivided one-half interest in which, representing $6,500, was vested in Charles Heller. It thus appears that at his death the $12,000 deposit left standing in the name of Louise Heller, together with $6,500 paid for her half interest in the West Sixth street property, constituted a sum much less than the amount received from the sale of her property.''

funds whether the latter were in a community account or in an account in which respondent's separate funds had been deposited prior to the marriage.'' The same was true in the case at bar.

It is presumed that expenses of the family came from community earnings. (*Huber* v. *Huber,* 27 Cal.2d 784, 792 [167 P.2d 708] ; *Estate of Ades,* 81 Cal.App.2d 334, 338 [184 P.2d 1].) Where the husband, charged with the support of a family, has income derived from his separate property and income from his earnings which are community property, there is no presumption that he has supported the family out of the separate property and preserved intact the community funds. He is at perfect liberty to devote all that is necessary of the community earnings to the family support and to preserve his separate property intact. (*Estate of Cudworth,* 133 Cal. 462, 468 [65 P. 1041].)

If a husband pays community indebtedness out of his separate funds at a time when the community funds are exhausted, he is entitled to reimbursement when the community account is replenished. (*Hill* v. *Hill,* 82 Cal.App.2d 682, 698 [187 P.2d 28].)

Patently, the trial court concluded by implication that the purchase price of the property decreed to be the separate property of defendant came from his separate funds. A detailed analysis of the record would serve no purpose. Suffice it to say, without setting up a debit and credit ledger account, that there was evidence from which the court could reasonably conclude that all of the items decreed to be the separate property of defendant found their source in his separate funds. There was evidence that the money defendant had on hand at the date of marriage, plus fees received after marriage for services performed before marriage, plus his pension, were sufficient to enable him to purchase the property which the court found to be his separate property. The source of every dollar deposited in the bank accounts was shown. Defendant's separate funds were traced into the items of property decreed to be his separate property. There was evidence that during the period in question defendant expended all of the income which originated after marriage from his practice in the expenses of his practice and the living expenses of the parties. There was evidence that from the date of marriage to the end of 1951 the community income was $50,807.57 and that the community expense, not including office expense, was $59,160.46, an excess of expenses over

income of $8,352.89. An accountant testified that at the time the various items adjudged to be defendant's separate property were purchased, there were no community funds available. ▮ Evidence that there was no excess of community income over community expenses is as effective to prove that all assets in the name of the defendant are separate property as a specific showing from which separate source each asset flowed. (*Estate of Ades*, 81 Cal.App.2d 334, 339 [184 P.2d 1] ; *Logan* v. *Forster*, 114 Cal.App.2d 587, 602 [250 P.2d 730].) ▮ On this evidence the court was warranted in concluding that the items of personal property in question are the separate property of defendant. (*Huber* v. *Huber*, 27 Cal.2d 784, 791-792 [167 P.2d 708].)

Plaintiff relies on *Truelsen* v. *Nelson*, 42 Cal.App.2d 750 [109 P.2d 996] ; *Falk* v. *Falk*, 48 Cal.App.2d 762 [120 P.2d 714] ; *Pope* v. *Pope*, 102 Cal.App.2d 353 [227 P.2d 867], and other cases. In *Truelsen* v. *Nelson, supra,* the trial court found that money in the possession of a wife at marriage and money earned by her thereafter, which had been deposited by her in one bank account, was community property. On appeal, the finding was sustained since there was no evidence as to when any particular amount was placed in the account or when any amounts were withdrawn therefrom, the wife kept no accounts, made no segregations, and the separate funds were not traced. In *Falk* v. *Falk, supra,* 48 Cal.App.2d 762, the evidence was not before the reviewing court. That court merely held that because the trial court had found that certain personalty had been purchased from commingled funds of both separate and community property so that it was impossible to trace the source from which the purchase price was derived, it erred in determining that any of such property was separate property. *Pope* v. *Pope, supra,* 102 Cal.App.2d 353, was a case in which the trial court had found that certain property was community and the husband was contending on appeal that it was separate. The evidence did not show, as it does here, that at the time the property was purchased the community funds had been exhausted and that the community expenses required contribution from separate sources. The cases relied on by plaintiff are all cases in which the evidence did not furnish a satisfactory basis for the segregation of separate and community interests.

▮ Plaintiff asserts that defendant and the accountant charged expenses attributable to defendant's separate property to the community, and that the court accepted the re-

sulting computations. She assigns error. After marriage, defendant received fees for services performed before marriage and his veteran's pension, and paid support money to a former wife. There was no evidence as to what, if any, expenses were incurred in collecting the fees or the pension and in depositing them in the bank account. Assuming there was some expense involved and that such expense and the support payments were properly chargeable to defendant's separate property, plaintiff was not prejudiced. The amount paid to the former wife was $7,700. The community expense, which did not include office expense, exceeded the community income by at least $8,352.89, for which defendant was entitled to be reimbursed. Defendant was entitled to, and the court no doubt gave him, a fair return on the fixed assets he had at the date of marriage, consisting of his office equipment and library which were used by him in producing the community income. (See *Berry* v. *Berry,* 117 Cal.App.2d 624, 630 [256 P.2d 646].) There was evidence that these assets had a value of $5,949 at the date of marriage. The court was justified in concluding there was a community deficit which offset the support money and the expense, if any, of receiving and depositing his separate fees and pension.

The record contains substantial evidence adduced by defendant from which the trial court could reasonably hold, as to the items decreed to be the separate property of defendant, that the presumption of community property was overcome. (*Huber* v. *Huber,* 27 Cal.2d 784, 791 [167 P.2d 708]; *In re Bauer,* 79 Cal. 304 [21 P. 759]; *Berry* v. *Berry,* 117 Cal.App. 2d 624 [256 P.2d 646]; *Hill* v. *Hill,* 82 Cal.App.2d 682 [187 P.2d 28]; *Estate of Ades,* 81 Cal.App.2d 334 [184 P.2d 1]; *Estate of Lissner,* 27 Cal.App.2d 570 [81 P.2d 448]; *Estate of Tompkins,* 123 Cal.App. 670 [11 P.2d 886].)

Defendant introduced in evidence a number of exhibits prepared by an accountant, consisting of a balance sheet as of March 26, 1945, the date of marriage; a schedule of accounts receivable on cases commenced prior to March 26, 1945; a schedule of defendant's receipts and disbursements from March 26, 1945, to December 1, 1951; and statements of defendant's income and expenses from January 1, 1945, to December 31, 1951. Present counsel for plaintiff. who did not represent her at the trial, now severely criticizes the information contained in these exhibits. No objection was made to their receipt in evidence. In fact, as to most of them plaintiff's then counsel expressly stated he had no

objection to their introduction. Further, the records on which the computations in the exhibits were based were available to plaintiff's counsel, and he had ample opportunity to cross-examine the accountant. Under such circumstances, plaintiff cannot now complain of the receipt of these exhibits in evidence. Their weight and effect was for the trial judge.

Plaintiff says the findings are insufficient, apparently meaning insufficient to support the judgment. The point is without merit. The findings generally dispose of all the issues made by the pleadings.　■■■　General findings in the words of the pleadings are a sufficient compliance with the requirement of making findings of facts. (*Webster* v. *Board of Dental Examiners,* 17 Cal.2d 534, 543 [110 P.2d 992].)　■■■　A finding that certain property owned by a married person is separate or community is a finding of an ultimate fact. (*Estate of Hill,* 167 Cal. 59, 63 [138 P. 690] ; *Tomaier* v. *Tomaier,* 23 Cal.2d 754, 760 [146 P.2d 905] ; *Caputo* v. *Fusco,* 54 Cal. App. 191, 192 [201 P. 604].)　■■■　The evidence from which this ultimate fact is determined need not be found by the court. (*Estate of Hill, supra,* 63 ; *Estate of Ades,* 81 Cal.App. 2d 334, 337 [184 P.2d 1] ; *Pope* v. *Pope,* 102 Cal.App.2d 353, 370 [227 P.2d 867].)

■■■　The complaint alleged (par. VIII) ''that defendant earns the sum of Two Thousand Dollars ($2,000.00), or more, each month from his profession as practicing attorney. . . .'' Referring to this allegation the answer denied ''generally and specifically each and every allegation therein contained and alleged.'' The court found ''that defendant is able to pay a reasonable sum to plaintiff every month as and for alimony. That except as in this paragraph found to be true, each and every allegation contained in paragraph VIII of plaintiff's complaint is untrue.'' Plaintiff contends the finding is that defendant did not earn $2,000 a month ''or any other sum at all'' from his profession, and that it is contrary to the evidence. It is unnecessary to determine the effect of the finding with respect to defendant's earning capacity. The issue as to his earnings was tried on the merits. If the answer is construed as a negative pregnant and as an admission that defendant earned $1,999.99 a month, no objection was made on that ground. The subject of defendant's earnings was fully testified to, and the evidence was uncontroverted that all community earnings were exhausted in community expenses. The only purpose of a finding as to

defendant's earnings in view of the findings as to the separate and community property would be to support the award for support and attorney fees. In view of the finding that defendant is able to pay a reasonable sum for the support of plaintiff, and a further finding that he is able to pay a reasonable attorney fee and costs, plaintiff has suffered no prejudice because of the finding in question. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 211-212 [259 P.2d 656]; *Logan* v. *Forster,* 114 Cal.App.2d 587, 602 [250 P.2d 730]; *Estate of Claussenius,* 96 Cal.App.2d 600, 606 [216 P.2d 485]; *Culjak* v. *Better Built Homes, Inc.,* 58 Cal.App.2d 720, 725 [137 P.2d 492].)

Defendant testified that in purchasing the realty and in taking title thereto in joint tenancy, his intention was that it remain that way during his lifetime provided plaintiff continue to be his wife so that if she were his wife at his death, if he predeceased her, she could get the property and probate be avoided. Defendant also testified that in buying the items of personal property awarded to him, it was his intention to buy them with his separate funds. Plaintiff asserts it was error to receive the evidence of defendant's intention. Evidence of defendant's secret, undisclosed intention was not admissible. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212-213 [259 P.2d 656]; *Miller* v. *Brode,* 186 Cal. 409, 412 [199 P. 531]; *Irwin* v. *Zuver,* 107 Cal.App.2d 245, 248 [236 P.2d 834].) *Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708], does not hold differently. The Huber case held such evidence was admissible provided the husband advised his wife of his intention at the time of the purchase and she concurred therein. However, plaintiff made no objection to admission of the evidence of defendant's intention. The point may not be considered. (*Thomason* v. *Hethcock,* 7 Cal.App.2d 634, 638 [46 P.2d 832].) At the time the testimony was given, the court stated: "It doesn't make any difference what his intention was. If he bought property with community funds, it is community; if he bought it with separate funds, it is separate." No doubt if timely objection had been made the evidence would not have been admitted.

 Plaintiff contends the court erred in admitting the evidence of defendant's accounts. Since no objection was made below, the point may not be considered on review. (3 Cal.Jur.2d 801, § 268.) Notwithstanding plaintiff's failure to preserve the point, we have examined the record and find no error.

The court awarded plaintiff a half interest in the realty, the personalty found to be community property, and $225 a month for her support. She contends the division of the property "is unfair, unjust and impracticable," and that the award of support money "is unfair, inadequate and insufficient." The court was without jurisdiction to award any of defendant's separate property to plaintiff. (*Allen* v. *Allen,* 159 Cal. 197, 201 [113 P. 160].) It awarded plaintiff more than half the community property. "In an action for divorce on the ground of extreme cruelty, subdivision 1 of section 146 of the Civil Code confers upon the trial court a wide latitude for the exercise of its judgment and discretion in assigning the community property to the respective parties and in every case it will be presumed that such discretion has been wisely and properly exercised, and though impliedly requiring that more than one-half of the community property shall be awarded to the innocent party, it does not otherwise limit the discretion of the trial court in making the award. The proportion should depend upon the particular circumstances of each case, and where the trial court has exercised a legal discretion this court, though clothed with the power of revision under the statute, will be slow to interfere with that discretion." (*Crouch* v. *Crouch,* 63 Cal.App.2d 747, 756 [147 P.2d 678].)

 Section 139 of the Civil Code provides that the court may compel the husband to make "suitable allowance" for the wife, "having regard to the circumstances of the parties respectively." Such suitable allowance is a matter for the determination of the trial court, having in mind those circumstances. (*Barham* v. *Barham,* 33 Cal.2d 416, 431 [202 P.2d 289].) The amount to be paid by the husband is within the discretion of the trial court. (*Bowman* v. *Bowman,* 29 Cal.2d 808, 811 [178 P.2d 751, 170 A.L.R. 246].) We cannot say as a matter of law that the court abused its discretion in the division of the community property or in the award for support.

The court denied plaintiff's motion for a new trial and her request on the hearing of the motion that the court vacate the findings and judgment, take additional evidence, and make new findings and judgment with respect to the property issues. Plaintiff assigns error. There was no error. The granting or denial of a new trial is a matter in the discretion of the trial judge, and his discretion will not be disturbed on review except on a showing of a manifest and unmis-

takable abuse. (20 Cal.Jur. 214, § 140.) ▮▮▮ No such showing is made here. The complaint appears to be that the court signed findings prepared by defendant's counsel. The record discloses that about thirty days after the judge announced his decision plaintiff's counsel had not prepared findings. Defendant's counsel then prepared them. Plaintiff's counsel was satisfied with those prepared by defendant's counsel. The judge did not sign them until about two weeks after they had been submitted. He signed them knowing they had been prepared by defendant's counsel. On the hearing of the motion for a new trial, the judge stated that the case had been thoroughly tried and considered and that there was no basis for reopening it.[2]

While plaintiff appealed from that part of the judgment terminating the order for support payment pendente lite, the point is not presented in the briefs and need not be considered.

---

[2]The judge said: "Before hearing you on this motion, the court wishes to state that this case was thoroughly discussed, by way of argument and review, all through the course of the trial; that the case was submitted after several days of trial, with intervening periods; that full and comprehensive briefs on the law were submitted to the court, and were carefully studied.

"The court had the case under submission for a long time, gave it thorough and extensive attention, and, so that counsel may know what the situation is, does not propose to try this case all over again.

"The court has read the affidavits presented, and some of them seem to ask the court now to give $350 a month instead of $225 a month, and it should be definitely understood that the court didn't just, offhand and without attention, fix upon a figure which the court felt might be unjust or might be improper. . . .

"And these findings were not submitted for a considerable time. The court might, itself, had it not been involved in so many other cases in the conduct of this particular branch court, have sat down and drawn the particular findings but the findings didn't come in.

"Then the defendant presented them, and then counsel for the plaintiff, who had represented her throughout the trial, sent a communication to the court, in which he said he adopted those findings, and they were in accordance with his own ideas, and they were satisfactory to him; that there had been some consultation with another attorney, but he was then attorney of record.

"Then the present counsel called the court and asked the court to hold up the findings, and the matter was discussed in chambers, and the findings were gone over in the course of informal discussion. The court indicated its opinion that the findings were sufficient, that it wasn't necessary to set out the entire evidentiary record in the findings. That would require, in some instances, in making a determination as to whether something is community or separate property, the setting out of all the evidence relating to it, because there isn't any other way to determine it.

"So it was clearly indicated that the court was going to adopt these findings. There is no indication that they were submitted by the defendant to 'slip something over on the court' or to set out in the findings something that wasn't in the judgment of the court or in the court's findings."

## Defendant's Appeal

Defendant first contends the finding that the realty is community property is not supported by the evidence. ■ The complaint alleged that the realty is community property. Defendant, in his verified answer, admitted it is community property, although eight months later he amended his answer to deny that it is. His admission stands as a declaration against interest. (*Abel* v. *O'Hearn,* 97 Cal.App.2d 747, 760-761 [218 P.2d 827]; *Caccamo* v. *Swanston,* 94 Cal.App.2d 957, 969 [212 P.2d 246]; *Miller* v. *Lee,* 66 Cal.App.2d 778, 785 [153 P.2d 190]; cf. *Lowmiller* v. *Monroe, Lyon & Miller, Inc.,* 101 Cal.App. 147, 152 [281 P. 433, 282 P. 537]; *Vaughn* v. *Jonas,* 31 Cal.2d 586, 594-596 [191 P.2d 432]; *Continental Nut Co.* v. *Slate,* 97 Cal.App.2d 264, 270-271 [217 P.2d 673]; *Dolinar* v. *Pedone,* 63 Cal.App.2d 169, 176-178 [146 P.2d 237].) Defendant's admission in his original verified answer constitutes a solemn confession that the realty is community property. In a cross-complaint (dismissed at trial) defendant alleged that community funds had been invested in the Hudson Avenue property. In his deposition, read to him at the trial, defendant testified he thought the Hudson Avenue property was purchased from community funds. Defendant testified he did not have any conversation with plaintiff about placing the realty in joint tenancy,—"I just went ahead and placed it in joint tenancy." At the time the Hudson Avenue property was purchased, there were funds in the bank account attributable to defendant's earnings after marriage. Defendant referred to the time when the Hudson Avenue property was purchased as "when we bought the house."

■ In determining whether property is community property, a trial judge is not bound by the form of the deed alone. Property may be found to be other than that indicated by the deed when there is an oral or written agreement as to the ownership of the property, or where such understanding may be inferred from the conduct and declarations of the spouses. (*Socol* v. *King,* 36 Cal.2d 342, 346 [223 P.2d 627]; *Faust* v. *Faust,* 91 Cal.App.2d 304, 308 [204 P.2d 906].) The question was one of fact. ■ The evidence amply supports the finding that the realty is community property. (*De Boer* v. *De Boer,* 111 Cal.App.2d 500 [244 P.2d 953]; *Bales* v. *Farley,* 107 Cal.App.2d 642, 646 [237 P.2d 686]; *Turknette* v. *Turknette,* 100 Cal.App.2d 271, 278 [223 P.2d 495]; *Sloper* v. *Sloper,* 91 Cal.App.2d 238, 244 [204 P.2d 910]; *Cox* v. *Cox,*

82 Cal.App.2d 867, 870 [187 P.2d 23] ; *Luminoso* v. *Luminoso*, 75 Cal.App.2d 472 [171 P.2d 516].)

Defendant next urges that the court erred in awarding plaintiff $225 a month for her support. It will be noted that plaintiff says $225 a month is not enough and that defendant says it is too much. We need say no more as to defendant's contention than has been said with respect to plaintiff's contention. (See *Scheibe* v. *Scheibe*, 57 Cal.App.2d 336, 342-344 [134 P.2d 835].)

The court awarded plaintiff's attorney $2,250 as fees. Defendant says it was too much. We find no merit in the contention. A mere examination of the reporter's transcript (537 pages) is sufficient to convince us the allowance was most reasonable. (See *Dietrich* v. *Dietrich*, 41 Cal. 2d 497, 506 [261 P.2d 269].)

Defendant asserts the court erred in sustaining objections to evidence which he claims would have shown the value of the goodwill of his practice at the date of marriage. The evidence proffered consisted of: (1) the salaries paid deputies in the office of the public defender, county counsel, and district attorney of Los Angeles county, and the city attorney of Los Angeles; and (2) defendant's net earnings from his practice in the four years prior to marriage. We know of no theory, and counsel advances none, on which the salaries paid the public officers mentioned would have aided the court in determining the value of the goodwill of the defendant's law practice. Assuming without deciding that an unmarried lawyer engaged in practice alone with an established clientele has an asset of value called goodwill which is his separate property, and that defendant's earnings in the four years prior to marriage would have assisted the court in evaluating such goodwill, such evidence was admitted. Defendant testified his net income for the five years prior to marriage was about $10,000 a year.

The parts of the judgment appealed from are affirmed. No costs of the appeals to defendant.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied January 14, 1954, and defendant and appellant's petition for a hearing by the Supreme Court was denied February 10, 1954.