[Civ. No. 24430. Third Dist. Apr. 23, 1986.]

In re the Marriage of HEDI and HANS BURKHART.
HEDI BURKHART, Respondent, v.
HANS BURKHART, Appellant.

## COUNSEL

Brown, Hill, Bedwell & Miles and Marsha Ann Bedwell for Appellant.

Trezza, Ithurburn & Steidlmayer and Mark G. Steidlmayer for Respondent.

## OPINION

**BACKUS, J.**\*—Husband appeals from a judgment which determined the division of property and the award of child and spousal support following dissolution of marriage. He contends the court erred in treating certain funds paid to wife as support rather than as a distribution to wife as part of her share of community property.[1] We reject husband's contentions and shall affirm the judgment.

---

\*Assigned by the Chairperson of the Judicial Council.

[1] In his brief husband also contends that the court erred in failing to value and divide the parties' Lake Tahoe real property. During argument before this court the parties agreed that this issue was covered by the stipulation of the parties that the property be sold with the court retaining jurisdiction to determine husband's separate property claims to the proceeds and to distribute such proceeds. Accordingly, it is unnecessary for us to address this issue.

### FACTS

The parties were married on March 9, 1964, and separated on April 28, 1980. Two children were born of the marriage. On August 3, 1981, wife filed a petition for dissolution of the marriage. Between the date of separation and December 6, 1982, there was no support order in the dissolution proceedings. However, during that period husband paid wife periodic sums totalling $40,400.[2] During the same period husband's salary was $6,200 per month. On December 5, 1982, husband was ordered to pay wife $1,500 per month in temporary spousal support.

In the court's judgment dividing community property husband was charged with net income of $400,654 from the rental of community property construction equipment. He had received gross rentals of $616,727 against which the court allowed $216,073 in deductions. One of the claimed (but disallowed) deductions was the $40,400 paid to wife. The trial court found that: "The disallowed expenses include a sum of $40,400 claimed as a 'distribution' when in fact that was support monies given to wife . . . by husband . . . . These monies, $40,400, represent an agreement between the parties whereby husband . . . agreed to continue to pay the monthly sum over to wife . . . as was the practice during marriage. Furthermore said sums, an aggregate of monthly sums, were eminently reasonable in light of husband['s] . . . salary. Husband['s] . . . contention as to 'distribution' is further rejected because he did not disclose said rentals in discovery when in fact he was aware of them, and, in fact wrongfully concealed them." From the judgment based on these findings, husband appeals.

### DISCUSSION

The trial court's judgment was to the effect that the $40,400 paid to wife was neither in fact nor in law a distribution from the community rental income; that it constituted support; that the parties agreed it was support. Since it was found not to have been a distribution from community it was implicitly found to have had its source in husband's separate property earnings.[3] In addition, the trial court in effect found that by reason of husband's concealment during discovery of his receipt of the community property rental income, he was estopped from claiming that the payments were a distri-

---

[2] Including payments of $5,000 on April 18, 1980; $4,000 on April 10, 1981; and the balance in payments of either of $1,200 or $1,300 per month starting in May 1981 and ending in August 1982.

[3] The amount paid was found to have been reasonable "in light of husband's salary."

bution to wife from such source.[4] Both substantial evidence and sound legal reason support the court's factual and legal determinations.

## I

Husband does not appear to contend that there was insufficient evidence to support the trial court's factual findings. He is wise. ■ It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. The power of an appellate court begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact. ■ Husband here has the burden of showing that there is no substantial evidence to support the trial court's findings. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) The record shows that husband's salary and the rental income were commingled into one checking account from which he paid both purely personal expenses and expenses attributable to the acquisition of the rental income and offset by the court against that income. It was from this same commingled account that the checks to wife adding up to the $40,400 were paid. ■ The trial court found that these sums were given for support and were not a distribution of the community income as claimed by husband. Substantial evidence supports this finding. Wife was primarily a homemaker during the 16-year marriage and worked parttime during separation making about $300 per month. The sums paid her by husband were a continuation of the sums normally given to wife by husband prior to separation to run the household. Husband admitted that he intended the sums to go for the support of his wife and two children. He could not recollect that the sums were for any purpose other than support. When husband made the payments to wife he did not tell her that it was her share of community property or that he had received the money from the lessee of the equipment. Substantial evidence supports the court's finding that husband concealed this community property rental income from her. Although there is nothing to prevent separated spouses from agreeing to share equally in community income and/or from waiving any claim for support from the other spouse's separate property, the trial court's implied finding in this case that there was no such agreement is amply supported by the record.

## II

Husband does not here contend that he paid wife the $40,400 from his separate property which is entitled to "reimbursement" from the community

---

[4]Husband does not argue this issue here. Whether viewed as a sanction for failure to make discovery or as equitable estoppel, the record supports this determination of the trial court. (See Code Civ. Proc., § 2034; *In re Marriage of Stallcup* (1979) 97 Cal.App.3d 294 [158 Cal.Rptr. 679]; see also 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132.)

for such payments. Again he is wise.[5] Such a contention could not prevail. The Supreme Court teaches in *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 85 [154 Cal.Rptr. 413, 592 P.2d 1165] that reimbursement for support obligations paid by the separated supporting spouse from separate property will not be required unless the parties separated by agreement. There is no evidence in this case of any such agreement. Husband seems to argue that the Supreme Court's interpretation of Civil Code section 5131 upon which it based the above rule is wrong. Such an argument falls on deaf ears. This court is bound by the rule of *Epstein*. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

### III

Husband argues that the payments to wife were a distribution of community property *as a matter of law.* He is wrong. He contends that the rules with respect to the presumed source of funds used to pay support and other community obligations prior to separation apply with equal force after separation. ■ He argues that Civil Code section 5132[6] only requires payment of support from separate property when the community property has been exhausted and since the community property was obviously not exhausted the $40,400 was a distribution of community income. In reading section 5132 he conveniently overlooks its language limiting its application to a time when the spouses "are living together." He further overlooks the trial court's finding, amply supported by the evidence, that the payments were not *in fact* made from the community property. ■ To the same effect and with the same result is husband's argument that it is presumed that expenses of the family came from community earnings and, thus, the $40,400 was a distribution of the community. He cites *Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116 [264 P.2d 626] for this rule.[7] *Thomasset* is inapposite. *Thomasset* dealt with before, not after, separation. In any

---

[5]We note that the net result of such reimbursement by the community would be that he would only recoup $20,200 rather than the $40,400 he claims.

[6]Section 5132 provides: A spouse must "support the [other] spouse while they are living together out of the separate property of the [spouse] when there is no community property . . . ."

[7]*Thomasset* was disapproved in part by the Supreme Court in *See* v. *See* (1966) 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776]. The *Thomasset* court cited *Huber* v. *Huber* (1946) 27 Cal.2d 784 [167 P.2d 708] as its authority for the above rule. *Huber,* in turn, cited *Title Ins. and Trust Co.* v. *Ingersoll* (1910) 158 Cal. 474 at page 492 [111 P. 360]. The court in *Ingersoll* held: "Inasmuch as the question may arise upon the trial of these issues, it is necessary to say something upon the subject of the liability of a husband for the maintenance of his wife. The law imposes on him the duty to maintain his wife. (Citations.) This means that it is his duty to furnish her money to pay such of the living expenses as he leaves it to her to look after, or to pay them himself. *In the absence of evidence showing the fund* from which he paid these expenses, it will be presumed to be of community funds, rather than from his separate property." (Italics added.)

event, the "presumption" referred to in *Thomasset* is only a rebuttable presumption affecting the burden of producing evidence (Evid. Code, § 600 et seq.) and the trial court here found that the payments did not come from the community property income. As we have seen, this finding was supported by substantial evidence.

## IV

■ Husband further argues that the mandate of Civil Code section 4805 which provides that support orders are first to be collected from the separated supporting spouse's "earned income" does not change the priorities established prior to separation that the presumed source for support is community property. He is wrong. The *Epstein* court based its determination that a separated spouse who pays support from his separate property is not generally entitled to reimbursement on section 4805.

## V

■ Husband makes a "public policy" argument that it would encourage a spouse to make voluntary "payments" to the other spouse if it were held that the payments were from community property and not separate property. We do not agree. First, since each party has a right to an equal share of the community property the law already requires that a separated spouse who comes into possession of community income make "payment" of an equal share to the other spouse.[8] Second, husband's argument is properly addressed to the Legislature, not to us. The Legislature, in passing Civil Code sections 4805 and 5118, designated a spouse's earnings after separation as the primary source for the payment of support. We need not explore the sound public policy arguments upon which the Legislature made this choice.

## VI

■ Finally, if we were to assume that husband successfully traced the source of the $40,400 to the community property income, the effect of the trial court's judgment is to require husband to reimburse the community this amount from his separate property. Absent an agreement to the contrary, this is the correct result. As the court stated in *In re Marriage of Smith* (1978) 79 Cal.App.3d 725 [145 Cal.Rptr. 205],[9] the rule which denies reimbursement with respect to transactions prior to separation in the absence of an agreement ". . . is based largely on the presumption the paying spouse

---

[8] In this case husband did not share "equally." The amounts paid to wife were about 10 percent of the net amounts received.

[9] Cited with approval by the Supreme Court in *Epstein*.

intended a gift. [Citations.] This presumption is, in turn, largely based no doubt upon the natural feelings of mutual affection and generosity presumably attending the marital state. When the parties have separated in anticipation of dissolution of the marriage, the rational basis for presuming an intention on the part of the paying spouse to make a gift is gone." (*Id.*, at p. 746.) Not only are such feelings gone but they are in many instances replaced by hostility and distrust. It would therefore be reasonable to presume that if subsequent to separation a spouse commingles separate and community earnings and thereafter pays a support obligation from the commingled funds that the payment was derived from and is charged to his or her separate property absent an agreement to the contrary. The court in *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, 932-933 [134 Cal.Rptr. 161] so holds with respect to payments made on a pendente lite support order. Such a rule would have considerable practical utility in the determination of such cases and would tend to discourage the commingling of separate and community income after separation. In addition, the results would be demonstrably fair as illustrated by this case. During the 32 months between separation and the pendente lite order the $40,400 which the wife received represented about 20 percent of the husband's total salary of $198,800 for such period. If husband's position were upheld it would mean that he would not have provided any support for his wife of 16 years during those 32 months. It would mean that husband would have successfully said to her: "The joke's on you!" "I didn't tell you I was doing it and I denied that I even had it, but I paid you with your own money." Our reply is best put in Molly's immortal words, "T'ain't funny, McGee!!"

DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and Sims, J., concurred.